UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Trudy E. Warneka**

   **v.**                                            Case No. 14-cv-00022-PB
                                                      Opinion No. 2015 DNH 071
**Carolyn W. Colvin,**
**Acting Commissioner,**
**Social Security Administration**


**MEMORANDUM AND ORDER**


Trudy Warneka seeks judicial review of a ruling by the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB"). Warneka claims that the Administrative Law Judge ("ALJ") erred in failing to call a medical advisor to assist him in determining the onset date of her claimed disability. For the reasons set forth below, I vacate the decision of the Commissioner and remand for further administrative proceedings.


**I.   BACKGROUND**

**A.   Stipulated Facts**

Pursuant to Local Rule 9.1, the parties have submitted a joint statement of material facts, which is part of the court's

1

record (Doc. No. 14).  The facts relevant to the disposition of this matter are discussed below.

**B.    Procedural History**

Warneka, a former medical assistant, was 45 years old when she filed an application for DIB.  She primarily claimed that her migraines, depression, anxiety, obesity, degenerative disc disease, and chronic shoulder pain were disabling conditions as of her date last insured ("DLI").  She alleged a disability onset date of May 15, 2001, which was her last day of work.  Her DLI was December 31, 2003.  Warneka's application was initially denied on July 17, 2009 because of lack of medical evidence  of disability before her DLI.  After the initial denial, Warneka submitted extensive medical records dating back to 1999.

On November 2, 2010, ALJ Robert Klingebiel held a hearing on Warneka's claim.  He found her not disabled on December 15, 2010.  The Decision Review Board vacated ALJ Klingebiel's decision and remanded.  On May 17, 2012, ALJ Paul Martin held a hearing on Warneka's claim.  He issued an unfavorable decision on May 25, 2012, which is the decision being appealed here.

In his decision, ALJ Martin followed the five-step sequential evaluation process.  See 20 C.F.R. § 404.1520(a)(4).  At Step One, he found that Warneka did not engage in substantial

gainful activity between her alleged onset date and her DLI.  At Step Two, he determined that her migraines were a severe impairment through her DLI but that her mental health limitations and her other physical impairments were not severe as of her DLI.  At Step Three, he found that Warneka's impairments did not meet or medically equal the severity of a listed impairment.

ALJ Martin determined that Warneka had the residual functional capacity ("RFC") through her date last insured to perform "medium work[1] . . . except she can perform all postural activities on an occasional basis and can reach overhead only occasionally."  Tr. at 22.  In determining her RFC, the ALJ noted evidence that conflicted with Warneka's reports of disabling migraines.  He gave no weight to Warneka's treating physicians' opinions because they "do not indicate that the claimant's current limitations date back to 2003."  Tr. at 25.  The ALJ gave "some weight" to the opinion of state agency consultant Dr. Charles Meader, who opined that Warneka was

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, [the ALJ] determine[s] that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

3

capable of "light exertion work"[2] and who wrote his opinion before Warneka submitted her extensive past medical records. Tr. at 25; Doc. No. 14 at 1, 22. Finally, at Step Four, the ALJ found that Warneka was capable of performing her past relevant work as of her DLI, and therefore was not disabled before her DLI.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

Findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id.  Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion."  Id. at 770.  Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence.  Id.

### III.  ANALYSIS

Warneka argues that the ALJ erred by failing to call a

5

medical advisor in accordance with Social Security Ruling ("SSR") 83-20.[3] SSR 83-20 requires an ALJ to call a medical advisor in some circumstances in order to determine the onset date of a claimant's impairments. See SSR 83-20, 1983 WL 31249 (Jan. 1, 1983). She also relies on Wilson v. Colvin, which interpreted SSR 83-20. See Wilson v. Colvin, 17 F. Supp. 3d 128, 138-43 (D.N.H. 2014). In response, the Commissioner argues that even if SSR 83-20 applies to this case, the ALJ was not required to call a medical advisor because contemporaneous medical evidence demonstrates that Warneka was not disabled before her DLI.[4]

---

[3] Warneka also argues that the ALJ erred by failing to find her depression, anxiety, obesity, degenerative disc disease, and chronic shoulder pain to be severe; by finding her capable of performing "medium" work; and by finding her capable of performing her past relevant work as a medical assistant. Because I agree with her argument about SSR 83-20 and vacate the Commissioner's decision on that basis, I do not address her other arguments.

[4] The Commissioner also contends that the SSA need not follow district court opinions when such opinions conflict with the SSA's interpretation of a SSR and there has been no contrary holding by the First Circuit. See Doc. No. 12-1 at 3 (citing 20 C.F.R. § 404.985; SSR 96-1p, 1996 WL 374182, at *2). Here, she argues that this court's holding in Wilson was contrary to the SSA's interpretation of SSR 83-20, and therefore the SSA will not follow Wilson. See id. The Commissioner does not, however, argue that I must give deference to the SSA's interpretation. Specifically, she makes no argument that Auer deference is applicable to the SSA's interpretation of a SSR. See Auer v.

**A.   SSR 83-20**

SSR 83-20 relates to the determination of a disability's onset date. See SSR 83-20, 1983 WL 31249. For "disabilities of nontraumatic origin," SSR 83-20 states that the ALJ's determination of a disability onset date "involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Id. at *2. The applicant's allegations are the "starting point," the day the impairment caused the claimant to stop working is "frequently of great significance," and medical evidence "serves as the primary element in the onset determination." Id.

In some cases, when precise evidence is not available and an onset date must be inferred, an ALJ must call on a medical advisor to assist in determining the onset date. Id. at *3. SSR 83-20 provides in part:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of

---

Robbins, 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of its own regulation is entitled to deference as long as it is not "plainly erroneous or inconsistent with the regulation"). While I agree that Wilson is not precedent that binds the SSA in other cases, I must decide this case in accordance with the law as I understand it. The SSA has not given me reason to reconsider Wilson. Accordingly, I do not address the SSA's contention that Wilson was incorrectly decided.

>a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. <u>At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.</u>
>       . . . The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

<u>Id.</u> (emphasis added).

When an ALJ determines that a claimant suffers from a present disability but the onset of the disability must be inferred from ambiguous evidence, courts agree that the ALJ must consult with a medical advisor before denying a claim for benefits. Ryan v. Astrue, 2008 DNH 148, 17-18 (citing Walton v. Halter, 243 F.3d 703, 709 (3d Cir. 2001); Grebenick v. Chater, 121 F.3d 1193, 1201 (8th Cir. 1997); Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995). Courts disagree, however, as to whether an ALJ must consult with a medical advisor when the ALJ skips over the question of present disability and denies a disability claim by determining that a claimant was not disabled as of her

date last insured.  Id. at 18.  In such cases, this court has repeatedly held that an ALJ must consult a medical advisor when the onset date of a disability is ambiguous.  See Fischer v. Colvin, 2014 DNH 227, 17; Wilson, 17 F. Supp. 3d at 140; Ryan, 2008 DNH 148, 17-20.

Requiring an ALJ to consult with a medical advisor when the ALJ makes no finding regarding present disability supports the policy that SSR 83-20 advances.  Specifically, a disability onset date can be an extremely difficult determination to make when a claimant suffers from a progressive impairment.  Ryan, 2008 DNH 148, 19.  That difficulty does not disappear, however, when an ALJ bypasses a determination of present disability and instead denies a disability claim based on a finding that the claimant was not disabled as of her DLI.  Id.  Accordingly, SSR 83-20 should not be limited to cases in which the ALJ makes a determination of present disability before addressing the onset date of the disability.  Id.

### B. Application of SSR 83-20

Here, although far from conclusive, Warneka has produced evidence to trigger the requirement that the ALJ call on the assistance of a medical advisor.  Rather than address the issue of present disability, the ALJ simply determined that Warneka

was not disabled as of her DLI.  Where, as here, there is enough evidence that a medical advisor could plausibly find that the claimant was disabled before the DLI, the ALJ cannot bypass the determination of current disability without calling on a medical advisor.

There is evidence in the record showing that Warneka is presently disabled.  In June 2010, Dr. Birgit Houston completed a physical RFC assessment, noting limitations in almost all categories, and concluding that Warneka was not capable of gainful employment on a sustained basis.  Tr. at 1193-96.  Similarly, Dr. Mimi Thein completed a mental RFC assessment in June 2010, noting clinical findings of "psychotic symptoms," "persistent depression," and "suicidal ideation (no intent or plan)," and noting limitations in almost all work-related activities.  Tr. at 1197-1201.

Warneka has also produced evidence that she suffered from disabling conditions before her DLI.  The record shows that she met with Dr. Elizabeth Blencowe, a psychiatrist, starting in February 1999 and thereafter on an approximately quarterly basis for the duration of the insured period.  Tr. at 1209-17.  During that time, Dr. Blencowe prescribed various medications for Warneka's depression and anxiety.  Tr. at 1209-17.  At the

hearing, Warneka testified that in the time before her last day of work, she "was calling in sick because . . . [she] was so depressed [she] couldn't get out of bed."  Tr. at 45.

Warneka has also produced medical evidence that supports her contention that her migraines were disabling before her DLI.  Specifically, on April 13, 2001, Dr. Chandra Tokala wrote that Warneka was experiencing almost daily migraines.  Tr. at 805.  At that time, Warneka reported to Dr. Tokala that "any kind of activity" exacerbated the pain of her migraines.  Tr. at 805.  Furthermore, in 2011, Dr. Birgit Houston wrote, "I have taken care of Trudy Warneka for many years.  During the years 2000 and 2001, she suffered from frequent migraine headaches, which led to frequent absenteeism from work for periods of time up to several days.  She has continued to have migraine headaches since leaving her employment."  Tr. at 1273.  In fact, in finding her migraines to be severe, the ALJ noted that they "caused more than mild work related limitations during the period at issue."  Tr. at 20.

The Commissioner argues that regardless of any pre-DLI evidence of Warneka's migraines, there is limited evidence that migraines continued to affect her ability to work through the date of the hearing.  The ALJ, however, made no finding with

11

respect to Warneka's current conditions.  Had the ALJ determined that Warneka's conditions (including her migraines) were not disabling as of the hearing, he could have denied her claim on that basis.  See Rossiter v. Astrue, 2011 DNH 115, 10 ("When a claimant suffering from a progressive impairment is not even disabled by the time of the hearing, there is no reason for the ALJ to consult a medical expert to decide whether the claimant was disabled at some earlier point.").  Although there is limited evidence of migraines affecting her current functioning, there is ample evidence of other conditions that, in combination with her migraines, significantly affect her current functioning.  Because the ALJ opted to bypass the issue of present disability, however, SSR 83-20 required him to call on a medical advisor.

To be sure, the record also contains evidence that conflicts with Warneka's contentions.  See Tr. at 24 (citing Tr. at 803, 908).  It is precisely in this kind of situation, however, where it is necessary for an ALJ to call on a medical advisor to assist in reviewing ambiguous evidence.  On remand, the ALJ is free to conclude that Warneka is not entitled to benefits, but only if he first (1) finds on the basis of substantial evidence that she is not presently disabled, or (2)

relies on the opinion of a medical advisor to find that Wilson was not disabled prior to her DLI.

## IV. CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion to affirm (Doc. No. 12) and grant Warneka's motion to reverse (Doc. No. 10). Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this decision.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 31, 2015

cc: Janine Gawryl, Esq.
    Robert J. Rabuck, Esq.